IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM ORLANDO McKINNON,

    Plaintiff,

v.

MCCF DIRECTOR,
WARDEN FREDRICK ABELLO,
DEPUTY WARDEN NASH,
LT. MICHAEL TATE,

    Defendants.

Civil Action No.: JKB-24-289

## MEMORANDUM OPINION

Plaintiff William Orlando McKinnon filed suit against Montgomery County Correctional Facility ("MCCF") Director, Warden Frederick Abello, Deputy Warden Nash, and Lt. Michael Tate. (ECF No. 1.) Pending and ripe for this Court's review are McKinnon's Motion for a Lien (ECF No. 7); a Motion to Dismiss or, in the alternative, for Summary Judgment filed on behalf of MCCF Director, Warden Abello, and Deputy Warden Nash (ECF No. 11); and a Motion to Dismiss or, in the alternative, for Summary Judgment filed on behalf of Lt. Tate (ECF No. 19). Each motion is opposed. (ECF Nos. 13, 16, 22.) Additionally, MCCF Director, Warden Abello, and Deputy Warden Nash filed a Motion to Strike Plaintiff's Surreply (ECF No. 17), and all Defendants have filed a Motion to Strike Plaintiff's Correspondence (ECF No. 24). No hearing is required to resolve the pending motions. *See* L. R. 105.6 (D. Md. 2023). For the reasons that follow Plaintiff's Motion for Lien and Defendants' Motions to Strike shall be denied; the Motion to Dismiss or for Summary Judgment filed by MCCF Director, Abello, and Nash shall be granted, and the complaint as to MCCF Director, Abello, and Nash will be dismissed without prejudice for failure to exhaust

administrative remedies; and the Motion to Dismiss or for Summary Judgment filed by Tate shall be denied.

I.   **Background**

McKinnon alleges that while he was incarcerated at MCCF, he was the victim of "another attempted sexual assault and sexual harassment incident with Lt. Michael Tate." (ECF No. 1-1 at 1.) McKinnon names as defendants the Director of MCCF, Warden Abello, Deputy Nash, and Lt. Tate for violating his Fourteenth Amendment rights. (*Id.*)

McKinnon explains that on September 8, 2023, at approximately 6:00 a.m., Lt. Tate came into his cell unaccompanied by any other staff members. (*Id.* at 1.) McKinnon asked Lt. Tate what he was doing coming into his cell because, at that time, McKinnon had a pending complaint against him for sexual assault. (*Id.*) McKinnon told Lt. Tate to get out of his cell, but Lt. Tate replied that he did not care and "that he still wants it." (*Id.*) Tate then tried to grope McKinnon, but McKinnon knocked his hand away and began yelling loud enough for the officer on duty to hear him. (*Id.*) McKinnon claims that Tate ran out of the cell but stopped at the cell door where he stood staring at him. (*Id.*)

McKinnon asserts that the MCCF Director, Warden Abello, Deputy Warden Nash, and Lt. Tate violated his Fourteenth Amendment rights through "excessive use of force." (*Id.*) He adds that the Director, Abello, and Nash should be held responsible under a theory of supervisory liability because they "have policies, customs and practices whether they are enforced or not that allowed Lt. Tate to go in and out of inmate cells in the early morning hours or whenever he wants to without any supervision by other staff members." (*Id.* at 1–2.) McKinnon states that the supervisors knew he had a sexual assault complaint against Lt. Tate, and that Deputy Warden Nash

was the person attempting to schedule an appointment between the Commissioner and McKinnon so that he could file a sexual assault complaint against Tate. (*Id.* at 2.)

McKinnon explains that he filed a grievance on September 8, 2023, and that on September 12, 2023, Captain Enos started an investigation pursuant to the Prison Rape Elimination Act ("PREA"), *see* 34 U.S.C. § 30301 *et seq.*, and told McKinnon he would keep him updated after his transfer. (ECF 1-1 at 2.) McKinnon claims he has not received any updates. (*Id.*) McKinnon has since been transferred from MCCF to Maryland Correctional Training Center ("MCTC").

As relief McKinnon seeks five-million dollars in compensatory damages and five-million dollars in punitive damages. (ECF No. 1 at 3.)

Defendants assert that McKinnon's complaint must be dismissed, *inter alia*, because he failed to exhaust administrative remedies prior to filing this lawsuit. (ECF No. 11 (MCCF Director, Abello, and Nash's Motion raising various arguments including a failure to exhaust administrative remedies; ECF No. 19 (Tate's Motion seeking dismissal based on administrative exhaustion).) McKinnon counters that because he pursued a PREA investigation into the sexual assault, the administrative remedy process was unavailable to him. (ECF Nos. 13, 16, 22.)

## II.   Standard of Review

The Defendants' motions are styled as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate a court's discretion under Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Defendants rely on exhibits attached to their Motions. Because the Court will consider Defendants' exhibits in ruling on the pending Motions, the Court must consider them pursuant to Rule 56. "[N]o formal notice of conversion by the district court is required in cases where it is

3

apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." *Carter v. Balt. Cty., Maryland*, 39 F. App'x 930, 933 (4th Cir. 2002) (per curiam).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

The Court is mindful that McKinnon is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

## II.   Discussion

### A.   Non-Dispositive Motions

McKinnon filed a Motion for Lien (ECF No. 7) seeking an Order from this Court placing a lien against the personal property and assets of the Defendants named in his complaint. Defendants oppose the motion and state that McKinnon has provided no factual basis for his motion, and it should therefore be denied. (ECF No. 16.) This Court agrees; McKinnon does not state any reason for his motion to be granted, and the Court has not identified a legal basis for doing so. The motion shall therefore be denied.

Defendants have filed two Motions to Strike (ECF Nos. 17, 24), arguing that McKinnon filed impermissible surreplies. The Court will deny both Motions. The Court is cognizant of McKinnon's status as a pro se litigant, and will construe these documents as supplements to his filings, rather than as surreplies.

### B.   Exhaustion of Administrative Remedies

The Defendants raise the affirmative defense that McKinnon has failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The

phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by a defendant. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Ross v. Blake*, 578 U.S. 632, 639 (2016); *Bock*, 549 U.S. at 215–16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Consequently, if McKinnon has not properly presented his claims through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA.

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). However, a court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

The Montgomery County Department of Corrections and Rehabilitation has an established grievance procedure for prisoners to use in the event a matter arises that requires a staff member to respond. (ECF No. 19-2 at 55–56.) The policy provides that "[p]rior to filing a grievance, inmates should attempt to make the complaint known to a staff member. Inmates should verbally present their complaint informally to an officer or other staff member . . . If the issue is not resolved at that point or inmates feel they did not receive an adequate response, inmates should take steps to file a formal written grievance." (*Id.* at 55.)

The first step in the process is for the inmate to request an Inmate Grievance Form from a correctional staff member which the inmate must fill out completely. (*Id.*) The completed form is then given to a correctional staff member assigned to work in the inmate's housing area. (*Id.*) "The receiving correctional staff member then reviews the grievance and will respond back with an answer to the grievance, forward the grievance to the appropriate section or individual (i.e., Medical, Case Manager, etc.), or make note that the issue is non-grievable." (*Id.*) The grievance is then returned to the inmate who may choose to accept the result or pursue the matter further. (*Id.*)

If an inmate chooses to accept the action, the inmate must sign the grievance acknowledging their agreement. (*Id.* at 56) If an inmate chooses to not accept the action, "the inmate must write their reason for disagreeing, sign and date the grievance again, and return the grievance to the staff member . . . . The staff member will then forward the grievance unless it is non- grievable." (*Id.*) In the event the matter is not subject to the grievance procedure, the staff member must mark the matter as non-grievable, explain why, and return it to the inmate. (*Id.*)

In step two of the grievance procedure the staff member to whom the grievance was referred must attempt to resolve the grievance as described in step one, but they must do so within

ten working days. (*Id.*) In step three of the process, the grievance is given to the appropriate section head or designee who must attempt to resolve the grievance within 10 working days. (*Id.*) In steps four and five the grievance is reviewed by the Warden and the Department Director, respectively, where yet another attempt to resolve the grievance occurs. (*Id.*)

The policies also provide that "[a] grievance form must be filed no later than thirty (30) days after the problem has occurred. However, if the grievance concerns an established policy or practice, the grievance can be filed at any time. A grievance related to a PREA matter may be filed at any time." (ECF No. 11-4 at 4.)

The Inmate/Resident Grievance Procedures and Guidelines, Policy Number 3000-27, § III describes those matters that are grievable and non-grievable. (ECF No. 11-4 at 2–3.) The grievable matters include, *inter alia*, "Individual employee and inmate/resident actions that affects them personally, including denial of access of inmates to the grievance procedure"; "Any other matter relating to conditions of care or supervision of an inmate or group of inmates within the Department of Correction and Rehabilitation, except as noted herein"; and "Any alleged violation of inmate rights." (*Id.*) Further, the policies provide that a grievance is "[a] written complaint by an inmate/resident on the inmate's/resident's own behalf regarding a policy applicable within the institution, a condition within the institution, an action involving an inmate/resident or a staff member of the institution, or an incident occurring within the institution." (*Id.* at 1.)

The non-grievable matters are:

1. County, State, and Federal court decisions.
2. County, State and Federal laws and regulations.
3. Parole Board decisions.
4. Department/Facility Policies and Procedures
5. Adjustment Board decisions (they may be appealed in writing to the Warden.)
6. Any item the individual agrees to in their Pre-Release Reentry Services (PRRS) contract.

      7. Treatment team decisions made by the Pre-Release Reentry Services (PRRS) involving an individual's phase movement or parole.
      8. Other matters beyond the control of the department. (power outages, traffic issues, etc.)
      9. Other matters identified in policies as not grievable (*i.e.* Policy 1200-6-1 Mail).

(*Id.* at 3.)

      Moreover, Defendants have provided their policy entitled Implementation of the PREA, Policy No. 3000-64. (ECF No. 19-4.) This policy provides that "[a]ll incidents or allegations of sexual battery, sexual misconduct and sexual harassment that occurred in a facility . . . will be reported in accordance with established policies and procedures." (*Id.* at 12.) It provides that "[t]he Department shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse"; that "[t]he Department shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse"; and that "[t]he Department shall ensure that an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and such grievance is not referred to a staff member who is the subject of the complaint." (*Id.* at 19.)

      McKinnon asserts that the grievance procedure was unavailable to him because he initiated an investigation pursuant to PREA. (ECF Nos. 13, 22.) However, as just discussed, the policies in place at MCCF do not exclude PREA incidents from the grievance process. There is nothing in the applicable procedures that excludes a complaint regarding sexual assault from the grievance procedure. Rather, the primary differences between a grievance alleging sexual abuse and a grievance alleging another form of assault or abuse is that the former is not subject to a time limit for filing the grievance, any staff member accused of sexual abuse is not permitted to be involved

9

in answering or otherwise addressing the grievance, and an inmate is never required to use an informal grievance process to resolve an allegation of sexual abuse.

Defendants MCCF Director, Abello, and Nash argue that McKinnon did not exhaust administrative remedies regarding his claim against them because in the grievance he filed, he makes no mention of the role these defendants allegedly played in permitting the sexual assault to occur. (ECF No. 11-1 at 8.)

The PLRA does not require plaintiffs to name all defendants to properly exhaust his claim. *See Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."). Courts must look to the prison policies themselves to determine if there is such a requirement. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). The Supreme Court has explained that "the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219 (also explaining that "notice to those who may later be sued" is not a "leading purpose[] of the exhaustion requirement).

The Court agrees with Defendants that the claims against MCCF Director, Abello, and Nash have not been administratively exhausted. Although the PLRA and the relevant procedures do not require McKinnon to have specifically named these officials, the relevant procedures provides that an inmate must "[b]e clear, describe in detail the issue/problem, and state the recommended remedy." (ECF No. 11-3 at 55.) The entirety of McKinnon's grievance reads: "On

September 8, 2023, the cameras will show that Lt. Tate came in my room around 6:00 AM and tried to grope me again. I already did have one sexual assault complaint against him. What is it going to take for the staff to stop him from stalking me." (ECF No. 1-1 at 3.) While this provides sufficient clarity and detail—as required by the grievance procedure—regarding allegations against Tate, it does not do so with respect to the other Defendants. Thus, the Complaint will be dismissed as to MCCF Director, Abello, and Nash.

Nash argues that McKinnon failed to exhaust his administrative remedies because McKinnon accepted the suggested solution, and did not further appeal it. (ECF No. 19-1.) Tate argues that under Md. Code Ann., Cts. & Jud. Proc. § 5-1003, McKinnon was required to pursue to completion "all appropriate proceedings for appeal of the administrative disposition, including any available proceedings for judicial review." (ECF No. 19-1 at 6.)

The Court disagrees. The PLRA is a federal law, and Maryland statutory law has no bearing on how exhaustion of administrative remedies is determined under its provisions. Indeed, judicial review is not necessary for proper PLRA exhaustion. Rather, the PLRA requires a prisoner to pursue "administrative remedies" until all such available remedies are exhausted. 28 U.S.C. § 1997e(a). The statute is silent about state judicial review procedures. Thus, McKinnon's failure to seek judicial review in state court has no effect on the determination whether he has exhausted administrative remedies under § 1997e(a).

Further, the Defendants have not explained why McKinnon was required to pursue his grievance to a higher step when the suggested possible solution was satisfactory to him. "The exhaustion requirement under the PLRA has been interpreted to require prisoners to pursue administrative grievances until they receive a final *denial* of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md.

2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004) (emphasis added). It is however axiomatic that a decision favorable to the inmate requires no further effort to obtain an administrative resolution for the complaint. *Toomer v. BCDC*, 537 F. App'x 204, 206 (4th Cir. 2013) ("After receiving a favorable outcome on the merits of his grievance at a lower step in the process, [plaintiff] was not obligated to pursue an administrative appeal to Step III in order to exhaust his administrative remedies."). Here, McKinnon filed his grievance, and the form reflects that he did not accept the proposed resolution at Step I. (ECF No. 1-1 at 3.) It then proceeded to Step II, and the form reflects that an investigation would be commenced, and McKinnon checked the box indicating: "I accept the action." Thus, he was not required to proceed to Step III.[1]

Thus, this Court agrees with Defendants that McKinnon did not raise his claims as to MCCF Director, Abello, and Nash in an administrative grievance and the claims against them must be dismissed without prejudice. However, with respect to Tate, the claim cannot be dismissed for failure to exhaust administrative remedies based on the record before the Court, and Tate has not addressed the merits of the claim against him.

As to the merits of McKinnon's claim, the Court notes that notwithstanding the absence of an independent cause of action under PREA, *see Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999), permitting the gratuitous sexual assault of inmates is not an acceptable practice under the Eighth Amendment's prohibition of cruel and unusual punishment. "It is well-established that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can

---

[1] Moreover, Defendants have not explained what McKinnon was required to do after he was transferred to MCTC while the PREA investigation was ongoing. The policies regarding a PREA investigation require the staff investigating the matter to inform the inmate of the results of the investigation. McKinnon has not failed to secure those results; rather, he alleges that the investigating officer has failed to inform him of the results. (*See* ECF No. 1-1 at 2.)

amount to an Eighth Amendment violation." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (citations and internal quotations omitted). However, "not every malevolent touch by a prison guard gives rise to a federal cause of action" and "although prisoners have a right to be free from sexual abuse . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Id.* (citations and internal quotations omitted).

Accordingly, Tate's motion will be denied without prejudice. In the event that Tate elects to file a Motion to Dismiss or for Summary Judgment again, he must provide this Court with additional evidence regarding exhaustion of administrative remedies, including the content of the response given to McKinnon, and must also address the merits of the claim against him.

### III. Conclusion

For the reasons stated, and in a separate Order which follows, the Motion for Lien and Motions to Strike shall be denied; the claim against Defendants Director MCCF, Abello, and Nash are dismissed without prejudice; and Defendant Tate's motion shall be denied.

Dated this 26 day of Nov., 2024.

FOR THE COURT:

James K. Bredar
United States District Judge

13